GEORGE KENDALL & others *v.* JOSEPH WINSOR.

A state court has no power to enjoin proceedings in a court of the United States; especially in a suit at law for damages for the infringement of a patent, so expressly, if not exclusively, confided by law to the federal courts.

If it had such power, it would be no ground for equitable interference, when the defences relied upon in equity are equally available at law, that parties, who were not at the time of trial examinable as witnesses, have since been made so, in the state courts, by statute.

A circuit court of the United States has, irrespective of the citizenship of the parties, power to entertain a bill for discovery in aid of the defences to a suit for the infringement of a patent, as ancillary to such suit, if not by the express authority of the 17th section of the act of congress, passed July 4, 1836, entitled "An act to promote the useful arts, &c."

BILL IN EQUITY to enjoin the execution of a judgment for damages, recovered by the respondent against the complainants in the circuit court of the United States for the Rhode Island district, in a suit at law for the infringement of a patent.

The bill alleged, that the complainant, George Kendall, purchased of one Kendall Aldrich his inchoate right to letters-patent of the United States, as an inventor of a machine for making weavers' harnesses, and took an assignment from said Aldrich, in writing, of said right; that thereupon the complainant, Kendall, took said Aldrich into his employment for the purpose of perfecting and constructing said machines, and, in connection with the other complainants, Leander M. Ware and George L. Jenckes, commenced to construct said machines upon the model of said Aldrich's machine, of which said Aldrich represented that he was the sole, original, and first inventor, and had worked said machines for about a year before they heard or knew that any other person than said Aldrich did or could claim that he was the first or original inventor thereof; that subsequently, to wit, in the summer of 1854, after the complainants had completed said machines, and had commenced making harnesses upon the same, they learned that the defendant claimed to be the first and original inventor of said machine;—that said Aldrich had been in the employment of the defendant, before making sale of his patent-right to the complainant, Kendall;

and that the defendant had commenced making harnesses on his machine previous to 1849, and had continued to make and sell such harnesses from that year until the year 1854 ; that the complainants had no knowledge of the defendant's machines, nor how the same were constructed and operated ; and relying upon the representations of said Aldrich, believed and acted upon the belief, that the machines they were constructing were substantially different from those operated by the defendant ; that the defendant knew that the complainants were constructing said machines as early as May or June, 1854, and told the complainant, Ware, that he had such knowledge ; and upon said Ware's inquiring about the defendant's machines, also told him, at several times during the summer and fall of 1854, that he did not intend to take out a patent for his machine, — that a patent was no protection, and that he would not and should not take a patent therefor, but should rely wholly upon the protection of his locks and bolts, and the secrecy with which he kept the machine and the complex character of its construction ; that said defendant also called at the place of business of the complainant Kendall some time in August, 1854, after all the machines constructed by the complainants were finished and in operation, and proposed to him to unite their several interests in a joint-stock company, and work their machines in common, for the equal benefit of both ; that the defendant, at various times from the year 1846 to the autumn of 1854, stated to many persons who inquired of him concerning his said machines, and who advised him to get a patent for the same, that he did not intend to take out letters-patent for the same, but should trust to his locks and bolts, and to the secrecy with which he kept his machine, and to the complex character and difficulty of imitating it, rather than to the protection of letters-patent, which must be made known to the public ; that such representations and conduct on the part of the defendant induced the complainants to believe that he did not intend to take out letters-patent for his machine, and they completed and put in operation their said machines under the belief, induced by the defendant, that they might construct and operate such machines if they could ; and that if the defendant had notified

them of his claim, as the first and original inventor of said machines, at the time when he first knew that the complainants were constructing them, and of his intention to take out letters-patent therefor, they would have desisted from completing said machines, except by the license and permission of the defendant; that said defendant, by his said declarations and conduct to the complainants, and by his declarations to others who communicated the same to the complainants, induced and permitted them to incur a heavy expense in completing said machines, and in preparing to carry on the manufacture of weaver's harnesses thereby, and licensed the complainants to operate said machinery so constructed by them and to use his inventions therein, notwithstanding any subsequent letters-patent which might be taken out by him; that the defendant, after his said acts and declarations and after all the machines of the complainants were, to the knowledge of the defendant, constructed and put in operation, on or about the fourth day of November, 1854, made application to the patent-office of the United States for letters-patent for his said invention, which in due course were issued to him on the second day of January, 1855; that on the eleventh day of September, 1855, the defendant commenced a suit against the complainants in the circuit court of the United States for the district of Rhode Island, for an infringement of his said letters-patent by the use of the machines so constructed and operated by them as aforesaid; and such proceedings were had in said case, that at a trial thereof at the November term of said court, 1856, the said defendant recovered a verdict against them for the sum of two thousand dollars and costs; that exceptions having been taken by the complainants to the rulings of the judge who tried the cause, a writ of error was allowed, and said writ and exceptions were argued at the term of the supreme court of the United States, held on the first Monday in December, 1858, and the decision of the circuit court approved; and that by mandate of said supreme court, final judgment in said suit has been entered up in said circuit court against the complainants, and execution has been taken out thereon, and is now in the hands of the defendant or of his attorney for service; that at the trial of said cause the

complainants were prevented from showing the facts and the license herein set forth, inasmuch as all the conversations between them, or either of them, and the defendant, were had with the defendant alone, and not in the presence of any other person, and by the law as it then stood, the complainants could not, in a trial at common law in said court, call the defendant as a witness, nor offer themselves as witnesses, and they could not file a bill of discovery in said court to procure the admissions of the defendant, inasmuch as said court had no jurisdiction over said parties for the purposes of said bill; that although some evidence of the declarations and conduct of the defendant were offered to the jury, the complainants were not able, for the reasons aforesaid, to prove the facts and declarations and license herein set forth, and could only offer the declarations of the defendant made to others who were not connected or intimate with the complainants, and who were not engaged in constructing said machines; that the defendant, by his declarations and conduct with regard to the complainants and the machines built by them prior to the defendant's application for letters-patent is, and ought to be, estopped from enforcing said judgment against them, and that it would be contrary to equity and justice for him so to do.

The bill then went on to interrogate the defendant particularly with regard to his interviews with, and declarations to, the complainants, or either of them, amounting, as alleged on the bill, to a license to use his invention and estopping him from enforcing his said judgment, and concluded with a prayer, that the defendant might be declared to be estopped by his conduct and declarations to the complainants and others, from revoking the license and permission given by him to the complainants to operate the machines so constructed by them prior to his application for letters-patent, and that the defendant might be perpetually enjoined from enforcing his said judgment, and from making service of his said execution on the complainants, and for general relief.

The defendant demurred to so much of this bill as sought relief on the grounds that at the time of the trial at law mentioned therein, the complainants, under the then state

of the law, could not, in a trial at common law in the circuit court, call the defendant as a witness, nor offer themselves as witnesses, and could not file a bill of discovery in said court to procure the admissions of the defendant. In addition, he filed an answer to the bill, disclaiming all knowledge of the complainant's, Kendall's, purchase of Aldrich's right to letters-patent for an improvement in machines for making weavers' harnesses, except as informed by the bill, and also all knowledge of Kendall's employment of Aldrich, and of the latter's commencement of the construction of machines, in connection with the other complainants, upon the principle claimed by him as his invention. The answer goes on to aver that as early as the defendant was informed that the complainants had surreptitiously obtained a knowledge of the principle and mode of operation of a machine for making weavers' harnesses, which was invented by the defendant, and which for a long time he had endeavored, with every precaution of secrecy, to perfect, in order that he might, with reasonable diligence, secure the benefit of it to himself under the protection of letters-patent; and expressly denies that he ever, directly or indirectly, by any act, statement, or language, conveyed the idea to the complainants, or to either of them, or to any other person, that he did not intend to secure the benefit of his invention by letters-patent, and to rely upon his bolts and locks, and upon the complex character of his machine, so as to induce the belief or opinion that he intended to abandon his invention, and his right, under the acts of congress, to secure the benefit of the same to himself, when, by sufficient experiment, he had rendered it useful and practicable. That in November, 1854, after a long course of experiment, extending over      years, during which he met with repeated failures and disappointments, the defendant succeeded in perfecting his invention so far, that his application for letters-patent was filed in the patent-office, although, as early as February, 1853, he had taken steps to secure the invention, by placing the matter in the hands of his solicitor, and on the second day of January, 1855, letters-patent were issued to him. That at the November term of the circuit court of the United States for the district of Rhode Island, 1855, —

a court having jurisdiction of the parties, and exclusive juris-
diction of the subject-matter, — the defendant commenced a
suit at law against the complainants for an infringement by
them of the letters-patent securing to him his said invention;
and at the November term of said court, 1856, the case was
fully tried upon the issue of abandonment on the part of the
plaintiff to the action, of his said invention, and of the right
of the complainants to use the specific machines built by
them, as alleged, prior to the date of the defendant's appli-
cation for letters-patent, and a verdict for damages for such in-
fringement was rendered for this defendant; that a writ of error
was sued out by said complainants, and the exceptions upon
which the same was founded were argued at the December
term of the supreme court of the United States, when the
judgment of the circuit court was affirmed, and a mandate, in
accordance with that affirmance, was transmitted to said court,
and final judgment has been entered in favor of the defendant,
as appears by a copy of the record in said court, and of all the
proceedings in said cause, to the answer annexed, as a part
thereof.    The answer then denies all, and all manner of unlaw-
ful combination and conspiracy, concluding in the usual form.

The case was submitted to the court upon bill, answer, and
demurrer; and upon the following briefs.

*T. A. Jenckes*, for the complainants.

The demurrer of the defendant is not well taken.

I.  The ground for the discovery and relief prayed for, is not
that there has been a change in the statute law of the state, by
which parties can be witnesses in their own behalf, but because
the facts stated in the bill disclose a clear case of license to the
complainants from the defendant to operate the machines re-
ferred to, or an estoppel against him from setting up his patent
obtained subsequent to the facts set forth, to the injury of the
complainants in their use of said machines.    The ground of
relief being purely equitable, it was proper for the complain-
ants to try their case at law, with such defences as they had to
an action at law, before coming into a court of equity for relief.
This they have done, and their legal defences have not availed
them.    The portions of the bill demurred to are statements by

way of excuse to show why the grounds of relief in the bill were not taken at law, in case the court should think that they would have been tenable at law. It has frequently been determined that a party shall not have relief in equity after *a full and fair trial* at law, although a court of equity may have jurisdiction. *Marine Ins. Co.* v. *Hodges*, 7 Cranch, 332; *Smith* v. *McIver*, 9 Wheaton, 532. The complainants were bound to allege, therefore, not only facts to show a case for equitable relief, but the reason why those facts were not submitted to the court of law. This they have done in the allegations referred to. They do not ask to have the defendant enjoined from using the process against them, issued by the United States court. This he has done, and is now pursuing them in this court upon a bond given to obtain their liberty from the commitment upon the process of that court. This court clearly has power to grant that relief.

II. The complainants did not have a full and fair trial at law. The statements in their bill show, that they did not have such full and fair trial, and those statements are to be taken as if proven upon this demurrer. They are,—

1. The matters in defence were within the knowledge of the plaintiff and defendant only, and of no other persons.

2. The complainants could not compel a discovery from the defendant, such as is now sought here, because the United States circuit court has no jurisdiction over the parties to compel a discovery.

3. The parties could not be witnesses in their own behalf, nor could the complainants compel the defendant to become a witness.

4. The complainants were not in fault in failing to present to the circuit court proofs which they had not the power to produce.

III. The relief prayed for in no way interferes with the process, proceedings, or judgment in the circuit court. Those proceedings have spent themselves; and the plaintiff in that court has resorted to this jurisdiction for relief, and himself and the subject-matter of his suit are now within the exclusive jurisdiction of this court.

IV. Each case is to be tried under the law respecting the admissibility of testimony, as it exists at the time of trial. It was to the advantage of the defendant that the complainants could not be witnesses, and could not compel him to be a witness at the trial at law in the United States circuit court. It may not be to his advantage that all the parties are competent witnesses in this court. But all parties take the risk of statute changes in the law of evidence, as well as in other laws. The change may not be a sufficient ground for granting a new trial in a case at law; but it is a reasonable excuse in a court of equity for not having been able to present fully a defence in a case at law, in which a judgment has been rendered contrary to the equities between the parties. It is a sufficient ground of relief to allege, that the circumstances upon which the complainants' equities are founded, are peculiarly within the knowledge of the defendant, and that he could neither be compelled to testify, in the law court in which he sued the complainants, nor to answer a bill of discovery.

V. The interrogatories to the defendant do not call for evidence merely cumulative to that offered in the court at law. The allegation in the bill demurred to, which is the only place to which we can look for facts, states, that "although some evidence of the declarations and conduct of the defendant were offered to the jury, yet they (the complainants) were *not able* to prove the facts and declarations and license hereinbefore set forth for the reasons aforesaid," *i. e.* because " all the conversations between your orators or either of them and said defendant were with the defendant alone, and not in the presence of any other person." The declarations of the defendant to other persons tended to prove an abandonment of the invention to the public, as much or more than they tended to prove a license; and these declarations did not and could not refer to the conversations between the parties, and, under the language of the bill, cannot be so held to refer. The answers to the interrogatories in the bill do not therefore call for cumulative.evidence.

VI. It is submitted that the case stated in the bill is clearly one for equitable relief, and that the demurrer admits directly the truth of the facts alleged, and impliedly admits that the discovery prayed for would sustain those allegations by the admis-

Kendall & others *v.* Winsor.

sions of the defendant. Upon the case as it stands, therefore, the complainants are entitled to relief against the judgment sought to be enforced against them. The cases cited by the defendants' counsel have no bearing upon the issues now presented. *Sawyer* v. *Merrill*, 10 Pick. 16, was a motion for a new trial, so that one person sued as a tort feasor, who had been discharged by the verdict, might be a witness for another tort feasor, charged by the verdict. The court say that the new trial, if granted, would include both, and therefore that there was no weight in the reason assigned. *Ableman* v. *Booth*, has no analogy to the case at bar. We must look to the bill for the facts in this case, and not to the report of *Winsor* v: *Kendall*, in the supreme court of the United States. It is submitted that the defendant should answer over.

*Thurston* and *Ripley*, for the defendant.

I. A change in the statute law of this state cannot be a ground for a new trial in actions previously disposed of, while the law was otherwise, and consequently this fact cannot furnish a basis for any equitable relief. The ground relied on in the bill substantially is, that witnesses who were incompetent to testify when the case was tried, have now become competent. *Sawyer* v. *Merrill*, 10 Pick. 16.

II. The effect of compelling the defendant to answer this part of the bill would be to imply, that if the fact was found against him at the final hearing, the judgment of the circuit court of the United States could be interfered with by this court. *Ableman* v. *Booth*, 21 Howard, 507.

III. Admitting that the parties complainant would testify, as is asserted to be the fact in the bill, the court can see that the evidence would be only cumulative. Evidence was offered on the same controverted points at the trial. See *Winsor* v. *Kendall*, 21 Howard, 322.

IV. It would be idle, therefore, to compel a discovery of that which, if true, could not affect the judgment already rendered.

V. It is no ground for relief that the complainants in this suit could not, on account of the citizenship of the parties, maintain a bill of discovery in aid of the case in the circuit court. The plaintiffs could have made themselves competent if they

had desired; and even without this, on the authority of *Dunn* v. *Clark*, 8 Peters, 1, the court would entertain an ancillary bill, it being in fact a part only of the pending suit.

AMES, C. J. We have not the power, if we had the inclination, to enjoin proceedings in the courts of the United States; (*McKim* v. *Voorhies*, 7 Cranch, 279; 2 Story's Eq. Jurisp. § 900, and cases cited;) and should hardly think of commencing so novel an enterprise in a case for the infringement of a patent, which is expressly, if not exclusively, confided by law to those courts. 5 U. S. Statutes at Large, 124; 2 Kent's Com. 368, and cases cited. Nor does this bill by its allegations furnish us with the least excuse for such interference beyond our proper limits. · It discloses no defence to the claim for damages in the suit at law, which was not equally available in that suit, as it would be in a court of equity, whether the defence be by way of license, or of estoppel, or because the machines of the defendants were constructed before the plaintiff's application for a patent. The suggestion in the bill, that when this case was tried in the circuit court of the United States for this district, parties were not allowed, as now in our state courts, to be called, or to offer themselves as witnesses, affords not the slightest ground for our interference. It would not, upon a bill for a new trial, had the trial at law been in our own courts; (*Briggs* v. *Smith and another*, 5 R. I. Rep. 213;) and certainly cannot excuse us for trespassing upon the settled jurisdiction of the courts of the United States. The plaintiffs are mistaken in supposing, that if they had applied in time, they might not have been assisted by the circuit court in their defences, by way of discovery. Irrespective of the citizenship of the parties, the court would have entertained, at the suit of either, a bill of discovery, as ancillary to the suit at law, under the authority of *Dunn* v. *Clark*, 8 Peters, 1; if indeed it would not have been empowered to do so by the express authority of the 14th section of the act of Congress, passed July 4, 1836, and entitled, "An act to promote the useful arts," &c. 5 U. S. Statutes at Large, 124.

In any view of this bill, whether we look at what it asks us to do, or the grounds which it lays for our action, it must be dismissed with costs.